T.C. Summary Opinion 2006-28


UNITED STATES TAX COURT


DEBORAH ANN PUCKETT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 24747-04S.          Filed February 16, 2006.


Deborah Ann Puckett, pro se.

<u>Edwina L. Jones</u>, for respondent.


ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in
effect when the petition was filed.[1]  The decision to be entered

---

[1]  Unless otherwise indicated, all subsequent section
references are to the Internal Revenue Code in effect for 2000,
the taxable year in issue, and all Rule references are to the Tax
Court Rules of Practice and Procedure.  All monetary amounts are
rounded to the nearest dollar.

is not reviewable by any other court, and this opinion should not be cited as authority.

Pursuant to the provisions of section 6015, petitioner submitted to respondent an administrative request for relief from Federal income tax liabilities for the taxable year 2000. Respondent determined that petitioner is not entitled to relief from joint and several liability for $15,044 of unpaid Federal income tax, penalties, and interest for 2000 under section 6015(f). Petitioner timely filed a petition with this Court under section 6015(e)(1) for review of respondent's determination.

The sole issue for decision is whether respondent abused his discretion in denying petitioner relief from joint and several liability under section 6015(f). We hold that he did not.

## Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts and accompanying exhibits.

At the time that the petition was filed, petitioner resided in Mooresville, North Carolina.

Petitioner and Tracy B. Puckett (Mr. Puckett) were married in 1987. Petitioner and Mr. Puckett began maintaining separate residences in May 2000 and were legally separated in April 2002.

Their separation agreement, dated March 12, 2002, stated, in pertinent part:

> The parties currently owe the IRS approximately $11,000.00 due to Husband's failure to pay his Social Security tax. Husband agrees that he shall be solely responsible for the said debt to the IRS and that he shall pay the debt to the IRS in a timely fashion and as determined by the IRS.

Petitioner and Mr. Puckett were divorced in March 2003. They have one son, who is hearing impaired and resides with petitioner. Petitioner was not abused by Mr. Puckett.

During 2000, petitioner worked part-time as a nurse for Novant Health Corporate Presbyterian Hospital. Petitioner earned wages of $4,206 from which $44 was withheld as Federal income tax.

During 2000, petitioner also operated a retail clothing business known as Ensembles, Inc. (Ensembles). She and Mr. Puckett were joint owners of Ensembles, through an S corporation that they organized in August 1999. During 2000, Ensembles incurred substantial losses and eventually closed for business in June 2001.

Mr. Puckett was also self-employed as a consultant for Crothall Health Care, Inc., during 2000. In 2000, he made estimated tax payments of $38 and reported a net profit of $62,936 on Schedule C, Profit or Loss From Business.

During 2000, petitioner and Mr. Puckett maintained joint checking and savings accounts into which they deposited their

salary and from which they paid household bills and some business bills. Petitioner had complete access to the joint accounts, reviewed monthly bank statements, and balanced the joint checkbook to the bank statements.

Petitioner and Mr. Puckett filed for bankruptcy under chapter 7 of the Bankruptcy Code on October 4, 2001, and they received a discharge on February 14, 2002.

On October 29, 2001, petitioner and Mr. Puckett filed a delinquent joint Federal income tax return for the taxable year 2000 reporting tax due of $10,027.[2] The amount due was solely attributable to Mr. Puckett's income calculated as an $8,893 self-employment tax liability plus an $823 tax on an individual retirement account distribution. They did not remit payment with their return.

On November 26, 2001, respondent assessed the tax, less income tax withholding and estimated tax payments, plus the applicable penalties and interest.

Petitioner submitted to respondent Forms 8857, Request for Innocent Spouse Relief, dated September 13, 2002, and November 6, 2002. On June 3, 2003, respondent's Examination Division denied petitioner's request for relief from joint and several liability.

---

[2] On the return, petitioner and Mr. Puckett reported total tax of $9,716 on line 57 and total payments of $44 on line 65. The return also reported an "estimated tax penalty" in the amount of $355.

On July 9, 2003, petitioner appealed to respondent's Appeals Office on the grounds that she filed jointly to lower Mr. Puckett's tax liability and with the understanding that Mr. Puckett would pay the tax owing.

On November 3, 2004, respondent issued a Notice Of Determination Concerning Your Request For Relief Under The Equitable Relief Provision Of Section 6015(f).  In the notice, respondent determined (1) that petitioner failed to meet her burden of establishing that she had a reasonable belief that the taxes would be paid timely and (2) that petitioner failed to establish that she would suffer an economic hardship if she were required to pay some or all of the tax.

Petitioner filed an imperfect petition, followed by an amended petition, contesting respondent's determination.[3]  The amended petition stated:

> The debt was due to my ex-husband not paying his social security taxes.  I had been instructed by my accountant to sign a joint tax return even though I was separated from my ex-husband in an attempt to "help with divorce relations" by lowering the amount he owed.  And also told I would not be held responsible.  I was then told by them to file an innocent spouse form which a former IRS caseworker told me 2 months ago "never works".

---

[3]  Mr. Puckett did not file a Notice of Intervention under Rule 325(b).  He did, however, file a statement with respondent's Appeals Office stating that he was assured by both his accountant and his wife that there would not be any taxes due for 2000 because of the losses related to his wife's business.

## Discussion

As a general rule, spouses filing a joint Federal income tax return are jointly and severally liable for all taxes shown on the return or found to be owing. Sec. 6013(d)(3). Section 6015, however, provides relief from joint and several liability to certain taxpayers under certain circumstances. Section 6015 encompasses three types of relief: (1) Section 6015(b)(1) provides full or apportioned relief from joint and several liability; (2) section 6015(c) provides proportionate tax relief to divorced or separated taxpayers; and (3) section 6015(f) provides equitable relief from joint and several liability in certain circumstances if neither section 6015(b) nor section 6015(c) is available.

In the instant case, petitioner requested relief under section 6015(f) from liability for the tax reported on the 2000 return but not paid when the return was filed. Respondent determined that petitioner was not entitled to the requested relief.

We review respondent's denial of equitable relief to petitioner after a trial de novo and under an abuse of discretion standard. Ewing v. Commissioner, 122 T.C. 32 (2004); Cheshire v. Commissioner, 115 T.C. 183, 198 (2000), affd. 282 F.3d 326 (5th Cir. 2002); Butler v. Commissioner, 114 T.C. 276, 292 (2000). Petitioner bears the burden of proving that respondent's denial

of equitable relief under section 6015(f) was an abuse of discretion.  Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004); Jonson v. Commissioner, 118 T.C. 106, 113 (2002), affd. 353 F.3d 1181 (10th Cir. 2003).  Petitioner must demonstrate that respondent exercised his discretion arbitrarily, capriciously, or without sound basis in fact or law.  Jonson v. Commissioner, supra at 125; Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

Section 6015(f) provides:

> SEC. 6015(f).  Equitable Relief.--Under procedures prescribed by the Secretary, if--
>
> (1) taking into account all the facts and circumstances, it is nequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and
>
> (2) relief is not available to such individual under subsection (b) or (c),
>
> the Secretary may relieve such individual of such liability.

As directed by section 6015(f), the Commissioner has prescribed procedures to be used in determining whether the requesting spouse qualifies for relief from joint and several liability under section 6015(f).  As applicable to the present case, these procedures are set forth in Rev. Proc. 2000-15, 2000-1 C.B. 447.[4]  The requesting spouse must satisfy seven conditions

---

[4] Rev. Proc. 2003-61, 2003-2 C.B. 296, which supersedes
(continued...)

(threshold conditions) before the Commissioner will consider a request for relief under section 6015(f). Rev. Proc. 2000-15, sec. 4.01, 2000-1 C.B. at 448. Respondent agrees that in this case those threshold conditions are satisfied.

Where the requesting spouse satisfies the threshold conditions, Rev. Proc. 2000-15, sec. 4.02(1), 200-1 C.B. at 448, sets forth the circumstances under which respondent will ordinarily grant relief under section 6015(f) in a case like the instant case where a liability is reported on a joint return but not paid. Relief under section 6015(f) will ordinarily be granted if all of the following elements are satisfied:

> (a) At the time relief is requested, the requesting spouse * * * has not been a member of the same household as the nonrequesting spouse at any time during the 12-month period ending on the date relief was requested;

> (b) At the time the return was signed, the requesting spouse had no knowledge or reason to know that the tax would not be paid. The requesting spouse must establish that it was reasonable for the requesting spouse to believe that the nonrequesting spouse would pay the reported liability. * * *; and

---

⁴(...continued)
Rev. Proc. 2000-15, 2000-1 C.B. 447, is effective for requests for relief under sec. 6015(f) filed on or after Nov. 1, 2003, and for requests for such relief pending on, and for which no preliminary determination letter had been issued as of, that date. Rev. Proc. 2003-61, sec. 7, 2003-2 C.B. at 297. Rev. Proc. 2003-61, supra is not applicable in the instant case because (1) petitioner filed her request for relief on Sep. 8, 2002, and (2) respondent issued a preliminary determination on June 3, 2003.

(c) The requesting spouse will suffer economic hardship if relief is not granted. For purposes of this section, the determination of whether a requesting spouse will suffer economic hardship will be made by the Commissioner or the Commissioner's delegate, and will be based on rules similar to those provided in section 301.6343-1(b)(4) of the Regulations on Procedure and Administration.

Rev. Proc. 2000-15, sec. 4.02(1), 2000-1 C.B. at 448.

In cases where the threshold conditions have been satisfied, but the requesting spouse does not qualify for relief under Rev. Proc. 2000-15, sec. 4.02(1), 2000-1 C.B. at 448, equitable relief may be granted under section 6015(f) if, taking into account all facts and circumstances, it is inequitable to hold the requesting spouse liable. Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448-449.

Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448-449, lists several nonexclusive factors that the Commissioner will consider in determining eligibility for equitable relief under section 6015(f). "No single factor will be determinative of whether equitable relief will or will not be granted in any particular case. Rather, all factors will be considered and weighed appropriately." Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448.

The nonexclusive list of factors that the Commissioner will consider as weighing in favor of granting relief includes: (1) The requesting spouse is separated or divorced from the nonrequesting spouse; (2) the requesting spouse would suffer

economic hardship if relief is denied; (3) the requesting spouse was abused by the nonrequesting spouse; (4) the requesting spouse did not know or have reason to know that the reported liability would be unpaid; (5) the nonrequesting spouse has a legal obligation pursuant to a divorce decree or agreement to pay the unpaid liability;[5] and (6) the unpaid liability is attributable solely to the nonrequesting spouse.  See Rev. Proc. 2000-15, sec. 4.03(1), 2000-1 C.B. at 448.

The nonexclusive list of factors that the Commissioner will consider as weighing against granting relief includes:  (1) The unpaid liability is attributable to the requesting spouse; (2) the requesting spouse knew or had reason to know at the time the return was signed that the reported liability would be unpaid; (3) the requesting spouse significantly benefited (beyond normal support) from the unpaid liability; (4) the requesting spouse will not suffer economic hardship if relief is denied; (5) the requesting spouse has not made a good faith effort to comply with Federal income tax laws in the tax years following the tax year to which the request for relief relates; and (6) the requesting spouse has a legal obligation pursuant to a divorce decree or

_____

[5]  According to the revenue procedure, however, "This will not be a factor weighing in favor of relief if the requesting spouse knew or had reason to know, at the time the divorce decree or agreement was entered into, that the nonrequesting spouse would not pay the liability."  Rev. Proc. 2000-15, sec. 4.03(1)(e), 2000-1 C.B. at 449.

agreement to pay the unpaid liability.  See Rev. Proc. 2000-15, sec. 4.03(2), 2000-1 C.B. at 449.

For reasons to be discussed, we conclude that petitioner does not qualify for relief under section 4.02 or 4.03 of the revenue procedure.  In order to streamline our discussion, we shall focus exclusively on the factors enumerated in section 4.03 of the revenue procedure.  That discussion, however, will make apparent why petitioner fails to qualify for relief under either section of the revenue procedure.

A.  Neutral Factors

We consider many of the factors to be neutral, weighing neither in favor of nor against granting petitioner relief.

1.  Abuse

Petitioner was not abused by Mr. Puckett.  Lack of spousal abuse is not a factor listed in Rev. Proc. 2000-15, sec. 4.03(2), 2000-1 C.B. at 449, that weighs against granting relief.  Therefore, this factor is neutral.  See Washington v. Commissioner, 120 T.C. 137, 149 (2003).

2.  Compliance With Federal Income Tax Laws

Respondent concedes that petitioner has complied with her income tax filing requirements.  This factor does not weigh in favor of or against granting relief to petitioner.

3. <u>Significant Benefit</u>

There is no evidence that petitioner significantly benefited beyond normal support from the unpaid liability. Therefore, this factor is neutral.

B. <u>Factors Weighing in Favor of Granting Relief</u>

1. <u>Marital Status</u>

Petitioner and Mr. Puckett began living apart and separate from each other in August 1999. They were legally separated in April 2002 and divorced in March 2003. Consequently, this factor weighs in favor of granting relief to petitioner.

2. <u>Attributable to Nonrequesting Spouse</u>

Respondent concedes that the liability for which relief is sought is solely attributable to Mr. Puckett. This factor weighs in favor of granting relief to petitioner.

C. <u>Factors Weighing Against Granting Relief</u>

1. <u>Knowledge or Reason To Know</u>

The relevant knowledge in the case of a reported but unpaid liability is whether when the return was signed, the taxpayer knew or had reason to know "that the tax would not be paid." <u>Washington v. Commissioner</u>, <u>supra</u>; Rev. Proc. 2000-15, sec. 4.03(1)(b), 2000-1 C.B. at 449. Accordingly, we must consider whether, "taking into account all the facts and circumstances", sec. 6015(f)(1), petitioner knew or had reason to know that Mr. Puckett would not pay the tax shown as due on the return.

Respondent contends that petitioner knew or had reason to know that the tax liability would not be paid. In support of his contention, respondent asserts: (1) Petitioner and Mr. Puckett filed for bankruptcy 1 week before signing their return; (2) when petitioner signed the return, she had constructive knowledge of the tax liability shown on the return; and (3) because of their financial difficulties, petitioner knew that Mr. Puckett would not pay the tax liability.

Having observed petitioner's appearance and demeanor at trial, we find her testimony to be honest, forthright, and credible. We conclude, however, that petitioner had reason to know that Mr. Puckett would not pay the liability reported on the 2000 return. Petitioner testified at trial that she knew when she signed the return that it reported a balance due and that no payment was remitted with the return. She asserts, however, that she was urged by her accountant to execute the return because "it makes for better divorce relations if I [petitioner] sign jointly and it will reduce the amount he [Mr. Puckett] owes". Petitioner further asserts that if she had known she would be liable for Mr. Puckett's unpaid tax liability, she would not have filed a joint return. Notwithstanding, however, petitioner admitted that she probably knew that there was a good chance Mr. Puckett was not going to pay the tax liability and that she "definitely didn't care how he was going to pay it." Indeed, petitioner admitted

that she helped Mr. Puckett pay a previous tax liability from his previous marriage.

Accordingly, this factor weighs against granting relief to petitioner.

2. Nonrequesting Spouse's Legal Obligation

Petitioner's and Mr. Puckett's March 2002 separation agreement placed the legal obligation to pay the unpaid 2000 tax liability exclusively on Mr. Puckett.

Respondent asserts, however, that this will not be a factor weighing in favor of relief if petitioner knew or had reason to know, at the time that the separation agreement was entered into, that Mr. Puckett would not pay the tax liability. See Rev. Proc. 2000-15, sec. 4.03(1)(e), 2000-1 C.B. at 449. Respondent argues that petitioner had reason to know, at the time the separation agreement was entered into, that Mr. Puckett would not pay the tax liability because, inter alia, they had received a discharge in bankruptcy on October 4, 2001. We agree.

As discussed above, after their discharge in bankruptcy, petitioner and Mr. Puckett filed their return on October 29, 2001, reporting a tax due. They did not remit payment. At the time they executed their separation agreement, the 2000 tax liability remained unpaid. Moreover, petitioner knew that Mr. Puckett had a delinquent tax liability from his previous marriage.

Consequently, this factor weighs against granting relief to petitioner.

### 3. Economic Hardship

Respondent contends that petitioner does not satisfy the economic hardship test because she admitted that she is able to pay her reasonable basic living expenses with her income. Respondent further contends that petitioner failed to submit any documentation of her monthly expenses to support her contention that she would suffer economic hardship.

Petitioner admitted at trial that she told the Appeals officer that her income was sufficient to meet her reasonable living allowances. Given that admission, and in the absence of documentation to the contrary, the record does not support a finding that petitioner will suffer economic hardship if she is not relieved from joint and several liability.

Consequently, this factor weighs against granting relief to petitioner.

## D. Conclusion

After considering all of the facts and circumstances, we find that it would not be inequitable to hold petitioner liable for payment of the outstanding liability. Thus, we hold that respondent did not abuse his discretion in denying petitioner equitable relief from joint and several liability under section 6015(f).

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.